IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ROSS PERRY,

                    Plaintiff,                              3:12-cv-01506-PK

v.                                                          FINDINGS AND
                                                           RECOMMENDATION

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

_____

PAPAK, Magistrate Judge:

    Plaintiff Michael Ross Perry filed this action on August 20, 2012, seeking judicial review

of the Commissioner of Social Security's final decision denying his application for supplemental

security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This court has

jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). I have considered all of the parties'

briefs and all of the evidence in the administrative record. For the reasons set forth below, the

Page 1 - FINDINGS AND RECOMMENDATION

Commissioner's decision should be reversed and the matter should be remanded for further proceedings.

## PROCEDURAL BACKGROUND

Perry protectively filed for SSI on May 1, 2007, alleging disability due to dyslexia, chronic anxiety, degenerative disc disease, left arm injury, speech impediment with stuttering, panic attacks, and learning disability. After his application was initially denied and upon reconsideration, Perry requested a hearing before an administrative law judge ("ALJ"). On July 21, 2009, ALJ Deborah J. Van Vleck held a video hearing, during which Perry, Perry's mother, and a vocational expert ("VE") testified. Perry was represented by counsel at the hearing. On March 19, 2010, the ALJ issued a decision finding Perry not disabled within the meaning of the Act. After the Appeals Council denied review, Perry filed a complaint in this court.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482

U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-41; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.* (quoting SSR No. 85-28).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii),

416.920(d).  If the claimant's impairments are equivalent to one of the impairments enumerated

in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled.  *See*

*Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments,

between the third and the fourth steps the ALJ is required to assess the claimant's residual

functional capacity ("RFC"), based on all of the relevant medical and other evidence in the

claimant's case record.  *See* 20 C.F.R. § 416.920(e).  The RFC is an estimate of the claimant's

capacity to perform sustained, work-related physical and/or mental activities on a regular and

continuing basis,[1] despite the limitations imposed by the claimant's impairments.  *See* 20 C.F.R.

§ 416.945(a); *see also* SSR No. 96-8p.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the

claimant's past relevant work.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §

416.920(a)(4)(iv).  If, in light of the claimant's RFC, the ALJ determines that the claimant can

still perform his or her past relevant work, the claimant will be found not disabled.  *See Bowen*,

482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).  In the event the claimant is

no longer capable of performing his or her past relevant work, the evaluation will proceed to the

fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the

claimant's age, education, and work experience to determine whether a person with those

characteristics and RFC could perform any jobs that exist in significant numbers in the national

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an
equivalent work schedule."  SSR No. 96-8p.

Page 4 - FINDINGS AND RECOMMENDATION

economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g),

416.960(c), 416.966.  If the Commissioner meets her burden to demonstrate the existence in

significant numbers in the national economy of jobs capable of being performed by a person with

the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the

claimant is found not to be disabled.  *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§

416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966.  A claimant will be found entitled to benefits

if the Commissioner fails to meet that burden at the fifth step.  *See Bowen*, 482 U.S. at 142; *see*

*also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Perry

had not engaged in substantial gainful activity since his application date of May 1, 2007.  Tr. 30.[2]

At the second step, the ALJ found that Perry had the following severe impairments: generalized

anxiety disorder with stuttering, dyslexia with reading disorder, lumbar degenerative disc disease,

and status post open reduction and internal fixation placement in the left arm.  *Id.*  Because

Perry's impairments were deemed severe, the ALJ properly proceeded to the third step of the

analysis.  *Id.*

At the third step, the ALJ found that none of Perry's impairments met or equaled any of

the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1.  Tr. 30-31.  The ALJ therefore

conducted an assessment of Perry's RFC.  The ALJ found that, during the relevant adjudication

period, Perry could:

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the
administrative record filed herein as docket no. 12.

> perform sedentary work as defined in 20 CFR 416.967(a) except
> that [he] is never able to: climb ladders/ropes/scaffolds, work with
> the public, or perform work that requires reading or writing; but, he
> can perform the following occasionally: climbing ramps and stairs,
> stooping, and kneeling; and he can balance, crouch, crawl, handle,
> and finger frequently. [Perry] has no limitations in the ability to
> feel. He must avoid concentrated exposure to extreme cold and
> hazardous conditions. He is limited to tasks that can be learned in
> less than 30 days with few changes. He is limited to occasional
> structured contact with coworkers and supervisors.

Tr. 32.

At the fourth step of the five-step process, the ALJ found that Perry had no past relevant work. Tr. 36. At step five, the ALJ determined that a person with Perry's functional limitations could perform jobs that exist in significant numbers in the national economy, such as cigar-head piercer, buckler and lacer, and label-cutter. Tr. 36-37. Based on her step-five findings, the ALJ concluded that Perry was not disabled. Tr. 37.

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (quoting *Reddick v.*

*Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).  The court may not substitute its judgment for that of

the Commissioner.  *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253

F.3d 1152, 1156 (9th Cir. 2001).  Moreover, the court may not rely upon its own independent

findings of fact in determining whether the ALJ's findings are supported by substantial evidence

of record.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery

Corp.*, 332 U.S. 194, 196 (1947)).  If the ALJ's interpretation of the evidence is rational, it is

immaterial that the evidence may be "susceptible [of] more than one rational interpretation."

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d

1450, 1453 (9th Cir. 1984)).

## ANALYSIS

Perry argues that the ALJ erred because she: (1) failed to conduct a legally sufficient

analysis of Perry's mental impairments at steps 2 and 3; (2) improperly rejected Perry's subjective

symptom testimony; and (3) improperly relied on the testimony of a VE.

## I.     Special Technique at Steps 2 and 3

First, Perry assigns error to the ALJ's findings at steps 2 and 3.  Specifically, Perry

contends that, in analyzing Perry's mental impairments, the ALJ failed to use the special

technique mandated by 20 C.F.R. § 404.1520a.  Although Perry acknowledges that the ALJ rated

the degree of limitation in each of the four functional areas identified in the regulation, Perry

argues that "she failed to provide any rationale, reference to any facts, or citation to any medical

exhibits or any other part of the record" when making her findings.  Perry's Opening Brief, #22,

at 8.  Perry argues that, in light of the ALJ's failure to provide any rationale for her findings, the

Ninth Circuit's decision in *Keyser v. Commissioner*, 648 F.3d 721 (9th Cir. 2011), requires this

court to remand the matter for further proceedings. Perry further requests that the court instruct the ALJ to fully consider Perry's depression on remand.

As the Ninth Circuit explained in *Keyser*:

> In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. That regulation requires those reviewing an application for disability to follow a special psychiatric review technique. 20 C.F.R. § 404.1520a. Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, *id.* § 404.1520a(b), rate the degree of functional limitation for four functional areas, *id.* § 404.1520a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), *id.* § 404.1520a(c)(1), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, *id.* § 404.1520a(c)(2).

*Keyser*, 648 F.3d at 725. The four functional areas the ALJ must assess are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Ordinarily, if the ALJ rates a claimant's degree of limitation as "none" or "mild" in the first three functional areas and "none" in the fourth functional area, the ALJ will find the claimant's mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). If, however, the ALJ finds the mental impairment is severe, he or she will proceed to step 3 to determine if the mental impairment "meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 404.1520a(d)(2).

In this case, the ALJ rated Perry's limitations as follows: "In activities of daily living, the claimant has no restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has mild difficulties. As for episodes

of decompensation, the claimant has experienced no episodes of decompensation of extended duration." Tr. 31. These findings are consistent with the unchallenged opinion of the agency reviewing psychological expert, Bill Hennings, Ph.D. Tr. 333. In light of her ratings of Perry's limitations in the four functional areas, the ALJ concluded at step 2 that Perry's generalized anxiety disorder with stuttering and dyslexia with reading disorder were severe impairments; however, the ALJ found at step 3 that the impairments did not meet or equal a listed mental disorder.

I find that the ALJ did not err at steps 2 or 3 of the sequential analysis. As an initial matter, although Perry claims that the ALJ should have considered his depression, Perry points to nothing in the medical records suggesting that he has been diagnosed with depression. A medically determinable impairment must be established by diagnosis from a medically acceptable source and must be supported by medical evidence. 20 C.F.R. §§ 416.908, 416.928. Although Luke Patrick, Ph.D., noted in his evaluation that Perry "acknowledged occasional passive thoughts of 'not wanting to go on living,'" Tr. 280, my review of the record reveals no further mention of suicidal ideation, any diagnosis of depression, or any evidence of functional limitation attributable to depression. Accordingly, the ALJ did not err in failing to consider Perry's depression.

With regard to Perry's contention that the ALJ failed to adequately employ the special technique mandated by 20 C.F.R. § 404.1520a, any error at step 2 is harmless because the ALJ found Perry's generalized anxiety disorder with stuttering and dyslexia with reading disorder to be severe impairments and, therefore, proceeded to step 3. Thus, Perry's argument that the ALJ failed to conduct the analysis required by 20 C.F.R. § 404.1520a is best framed as a challenge to

Page 9 - FINDINGS AND RECOMMENDATION

the ALJ's analysis at step 3.  Such a challenge, however, is without merit.  Unlike in *Keyser*, the ALJ rated Perry's limitations in each of the four functional areas and the ALJ's ratings were consistent with Dr. Hennings's opinion.  No further analysis was required.  *See Hoopai v. Astrue*, 499 F.3d 1071, 1077-78 (9th Cir. 2007); *see also Keyser*, 648 F.3d at 726 (discussing *Hoopai*).

Moreover, even if the ALJ's analysis of the four functional areas were insufficient, Perry fails to establish that such error was prejudicial.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (concluding that the burden is on the claimant to show that an error was harmful); *McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (same).  Perry does not suggest that the ALJ's rating as to any functional area is erroneous nor does he contend that, had the ALJ incorporated additional findings, she would have concluded that any of Perry's mental impairments or a combination thereof meets or medically equals one of the listed impairments.

Thus, in light of the foregoing, there is no reason to disturb the ALJ's findings at steps 2 and 3 of the disability analysis framework.

## II.     Perry's Credibility

Next, Perry contends that the ALJ improperly rejected his testimony.  Perry argues that the ALJ provided "backward rationale" for her credibility finding—that is, the ALJ found Perry's statements regarding his symptoms not credible to the extent that they were inconsistent with the RFC assessment.  Perry's Opening Brief, #22, at 11.  Perry argues that district courts and at least one circuit court have found this type of "cart-before-the-horse" credibility finding to be impermissible.  *Id.* at 12.  Perry further contends that the ALJ's "*post hoc* reasons do not cure the error."  *Id.* at 13.  The ALJ cited Perry's report of his daily activities as evidence that his limitations were not as severe as he alleged, but Perry argues that "nothing about [his] sporadic

Page 10 - FINDINGS AND RECOMMENDATION

activities of daily living . . . is inconsistent with his claimed limitations." *Id.* at 14. Perry claims

that, when his allegations are credited as true, he is disabled within the meaning of the Act.

The Commissioner responds that the ALJ did not err in partially rejecting Perry's

testimony. First, the Commissioner contends that the ALJ did not disregard Perry's subjective

symptom testimony merely because it conflicted with the RFC assessment but, rather,

"referenced the [RFC] assessment to indicate the extent to which she credited [Perry's]

testimony." Commissioner's Responsive Brief, #23, at 8. Second, the Commissioner argues that

the ALJ provided sufficient reasons to find Perry not credible. Specifically, the ALJ found that

Perry's statements regarding his daily activities demonstrated that he had "a greater capacity to sit

and stand than he alleged." *Id.* Furthermore, the Commissioner contends that the ALJ's

credibility finding is reasonable in light of the medical evidence, including the opinions of

Sharon Eder, M.D., and Neal Berner, M.D. The Commissioner notes that the ALJ gave great

weight to the opinions of Dr. Eder and Dr. Berner, both of whom found that Perry "retained the

ability to perform sedentary exertion activities." *Id.* at 9.

In determining whether to accept a claimant's subjective testimony, an ALJ must perform

a two-stage analysis. *See Smolen*, 80 F.3d at 1281. At the first stage, the ALJ is required to

consider whether the claimant produced objective medical evidence of an impairment or

impairments and demonstrated that the impairment or combination of impairments could

reasonably be expected to produce some degree of the alleged symptoms or pain. *See id.* at

1281-82. If the claimant meets this burden, then in the second stage, the ALJ may only reject the

claimant's testimony if she makes specific findings that include clear and convincing reasons for

doing so. *See id.* at 1283-84. If the ALJ discredits the claimant's testimony regarding his

symptoms and pain, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's subjective testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

In weighing a claimant's credibility, the ALJ may consider the following factors: "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The claimant's failure to seek treatment or failure to follow a prescribed course of treatment may also be considered in the ALJ's credibility determination. *See Smolen*, 80 F.3d at 1284. An ALJ may not discredit a claimant's testimony solely on the basis that it is not supported by objective medical evidence. *See Light*, 119 F.3d at 792. However, where the ALJ's credibility determination is supported by substantial evidence in the record, the finding cannot be questioned on review. *See Thomas*, 278 F.3d at 959.

In this case, the ALJ found in the first part of her credibility determination that Perry's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 32. In the second part of the analysis, the ALJ found that Perry's "statements concerning the intensity, persistence and limiting effects of" his alleged symptoms were "not credible to the extent they [were] inconsistent with the . . . [RFC] assessment." Tr. 32. The ALJ proceeded to find that Perry's subjective symptom statements were inconsistent with his reported daily activities and the medical evidence, including the opinions of Dr. Eder, Dr. Berner, and Tatsuro Ogisu, M.D.

Page 12 - FINDINGS AND RECOMMENDATION

Perry correctly notes that an ALJ must consider a claimant's credibility when assessing

the claimant's RFC. *See* 20 C.F.R. § 416.945(a)(3). Consequently, the ALJ may not reach a

conclusion as to the claimant's limitations and then discount a claimant's testimony to the extent

it conflicts with such conclusion. *See Hodgson v. Astrue*, Civil No. 3:10-cv-6261-ST, 2011 WL

4852307, at *6 (D. Or. Sept. 14, 2011), *adopted by* 2011 WL 4809819 (D. Or. Oct. 11, 2011).

Perry contends that the ALJ engaged in this type of improper reasoning, as evidenced by her

statement that she discounted Perry's testimony to the extent it was inconsistent with the RFC

assessment. As the Commissioner notes, courts in this District have found that similar

"introductory statement[s]," although perhaps poorly worded, are permissible when the ALJ

proceeds to list satisfactory reasons for the credibility finding. *Id.* at *7; *see also Cain v. Astrue*,

No. 03:11-cv-01508-HZ, 2012 WL 6725841, at *5 (D. Or. Dec. 26, 2012); *Hess v. Astrue*, No.

3:11-CV-00572 RE, 2012 WL 3044148, at *4 (D. Or. July 24, 2012). Such satisfactory reasons

are absent in this case.

First, although the record clearly reflects that Perry does engage in some daily activities

such as light housework and watering his yard, the ALJ improperly relied on this conduct to

reject Perry's testimony. As noted above, an ALJ may look to reports of a claimant's daily

activities to support a finding that subjective pain complaints are not credible. *See Light*, 119

F.3d at 792; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). If, despite his or her claims of

pain, "a claimant is able to perform household chores and other activities that involve many of

the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to

conclude that the claimant's pain does not prevent the claimant from working." *Fair*, 885 F.2d at

603. Yet, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be

eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* (citations omitted); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (citation omitted)).

For example, a claimant may have the capacity to travel periodically, cook meals, and wash dishes and still be prevented from working. *Fair*, 885 F.2d at 603. Thus, "if a claimant is able to spend a substantial part of his day engaged in pursuits [involving the performance of physical functions] that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of excess pain." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (emphasis omitted) (citation omitted) (internal quotation mark omitted). Ninth Circuit precedent therefore suggests that an ALJ may only discredit a claimant's pain testimony by specifically finding both that: (1) the claimant spends a substantial part of his or her day engaged in physical activities; and (2) those activities are of the same type that the claimant would use in a work setting.

This is not the case here. Perry and his mother reported that: (1) he is able to tend to his personal care by himself, including dressing, bathing, and using the toilet; (2) he prepares simple meals such as sandwiches and frozen dinners; (3) he does laundry twice a week and sweeps; (4) he waters his flowers and yard; (5) he goes outside every day and, when he goes out, he walks, uses public transportation, or rides in a car; and (6) he goes to the food bank and is able to

Page 14 - FINDINGS AND RECOMMENDATION

do so in thirty minutes. Tr. 33. Although the ALJ relied on these daily activities as evidence that

Perry has "an ability to sit and stand," Tr. 33, she failed to explain how, for instance, walking

short distances or watering the yard mimic the types of physical tasks Perry would be expected to

perform in the workplace. *See Fair*, 885 F.2d at 603. Nor did she address whether Perry spends

a substantial part of his day engaged in these types of physical activities. Indeed, in their

function reports, Perry and his mother stated that, other than limited household chores and

outings, he primarily lies on a heating pad and watches television. Tr. 174, 197. Accordingly,

because the ALJ did not adequately explain how Perry's daily activities are inconsistent with his

alleged limitations, such daily activities do not constitute a clear and convincing reason for

rejecting his testimony.

      The only other reason the ALJ provided for rejecting Perry's symptom testimony was the

medical evidence in the record. Tr. 33. As noted above, however, an ALJ may not discredit a

claimant's testimony solely on the basis that it is not supported by objective medical evidence.

*See Light*, 119 F.3d at 792; *see also* SSR No. 96-7p ("[A]llegations concerning the intensity and

persistence of pain or other symptoms may not be disregarded solely because they are not

substantiated by objective medical evidence."); *Fair*, 885 F.2d at 602 (same). Because I find that

the ALJ did not adequately explain how Perry's daily activities were inconsistent with his alleged

limitations, the medical evidence alone may not serve as an independent basis for discrediting

Perry's testimony.

      Thus, in light of the foregoing, I find that the ALJ failed to provide clear and convincing

reasons for partially rejecting Perry's subjective symptom statements. In his opening brief, Perry

urges the court to apply the "credit-as-true" doctrine and find him disabled on the existing record.

Page 15 - FINDINGS AND RECOMMENDATION

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Strauss v. Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011). The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

In this case, while the ALJ failed to provide legally sufficient reasons for rejecting Perry's testimony, it is not clear from the record that the ALJ would be required to find Perry disabled even if his statements were credited. Rather, the ALJ should be given the opportunity to formulate a correct RFC reflective of all credible limitations in the record and take new testimony from the VE regarding whether jobs exist in significant numbers in the national economy that a person with Perry's limitations could perform. I therefore recommend that this case be remanded for further proceedings in order to reassess Perry's credibility.

## III.   VE Evidence[3]

Finally, Perry argues that the ALJ erred at step 5 of the sequential decision-making process. At step five, the Commissioner must establish that there is a significant number of jobs

---

[3] Although I find that this case should be remanded for further proceedings to allow the ALJ to reassess Perry's credibility, I find it appropriate to discuss Perry's arguments with regard to the alleged errors at step 5 to provide guidance to the ALJ on remand.

in the national economy that a person with the claimant's RFC is capable of performing. *Tackett*, 180 F.3d at 1099; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the claimant's limitations and restrictions. 20 C.F.R. § 416.966; *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001); *Tackett*, 180 F.3d at 1099; *Andrews*, 53 F.3d at 1043.

In this case, Perry argues that the ALJ erred when, in reliance on the testimony of a VE, she determined that a person with Perry's RFC, age, education, and work experience could perform the occupations of: (1) cigar-head piercer, of which there are 8,900 jobs in the region; (2) buckler and lacer,[4] of which there are 1,400 jobs in the region; and (3) label-cutter, of which there are 1,200 jobs in the region. Specifically, Perry contends that the VE's testimony was without proper foundation and, moreover, the ALJ failed to inquire as to whether the VE's testimony was consistent with the *Dictionary of Occupational Titles* ("*DOT*").

## A.    Proper Foundation

Perry first contends that the VE's methodology is suspect, as evidenced by his testimony that there are 8,900 cigar-head piercer jobs in Oregon, a state "where no tobacco is grown." Perry's Opening Brief, #22, at 5. Perry notes that the VE relied on a software program called "Job Browser Pro" in determining what jobs were suitable and in what numbers but contends that the VE was unable to answer questions regarding "the source of [the] program's data" or "the degree of accuracy of the numbers he was providing." *Id.* Given the VE's questionable methodology, Perry claims that the VE's testimony cannot constitute substantial evidence

---

[4] At the hearing, the VE testified that Perry could perform the occupation of "*buffer* and lacer" but provided the *Dictionary of Occupational Title*'s code for "buckler and lacer." Tr. 73. In her written decision, the ALJ referred to the position as "buckler and lacer." Tr. 37.

supporting the ALJ's finding that there are jobs existing in substantial numbers in the national economy that a person with Perry's RFC, age, education, and work experience could perform.

In response, the Commissioner argues that the VE's methodology is sound—that is, he testified that he used "the same type of data as [VEs] normally rely upon" and the software program he used, Job Browser Pro, contains data from the *DOT*, the United States Census Bureau, and Job Browser Pro's employees, who research occupations and the number of positions in different regions. Commissioner's Responsive Brief, #23, at 6. The Commissioner further notes that the Ninth Circuit has held that Federal Rule of Evidence 702 and the admissibility standard announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), do not govern the admissibility of VE testimony in administrative proceedings.

I find that Perry's argument is without merit. The VE submitted a resume demonstrating his expertise as a VE. Tr. 111. He further testified that he used Job Browser Pro, which provides "the type of data that a vocational expert normally relies upon in formulating the type of opinions" the ALJ requested. Tr. 76. No further foundation was required for his testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."); *see also id.* at 1218 n.4 (holding that Federal Rule of Evidence 702 and the requirements set forth in *Daubert* do not apply in hearings before an ALJ).

**B.    Consistency with *DOT***

Second, Perry argues that the ALJ erred by failing to inquire whether the VE's testimony was consistent with the *DOT*, as required by Social Security Ruling ("SSR") 00-4p and *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007). Perry argues that such error cannot be characterized as

Page 18 - FINDINGS AND RECOMMENDATION

harmless because "there is no way for a reviewing court to know whether there is a conflict" between the VE's testimony and the *DOT* absent a remand to the ALJ for further proceedings. Perry's Opening Brief, #22, at 7.

In response, the Commissioner first contends that the court may uphold the ALJ's step-five finding solely on the basis that a person with Perry's limitations is capable of performing the occupation of label-cutter and there is a significant number of label-cutter positions in the national economy. Although the Commissioner notes that the VE provided the *DOT*'s corresponding code number for label-cutter, the Commissioner concedes that "the ALJ should have asked the [VE] whether his testimony was consistent with the" *DOT*. Commissioner's Responsive Brief, #23, at 5. Nevertheless, the Commissioner maintains that any error was harmless because Perry fails to identify any conflict between the VE's testimony and the *DOT*.

Evidence provided by a VE generally should be consistent with the *DOT*, although neither source automatically prevails when there is a conflict. *Massachi*, 486 F.3d at 1153; *see also* SSR 00-4p ("Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [*DOT*]."). In the event that a conflict exists, "the ALJ must . . . determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [*DOT*]." *Massachi*, 486 F.3d at 1153. Thus, at the hearing, the ALJ has an affirmative duty to ask the VE whether his or her testimony is consistent with the *DOT* and, if it is not, whether there is a reasonable explanation for the conflict. *Id.*; *see also* SSR 00-4p ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.").

Page 19 - FINDINGS AND RECOMMENDATION

In this case, the ALJ erred in failing to ask the VE whether his testimony was consistent with the *DOT*.[5]  Although the ALJ notes in her written decision that the VE's "testimony is consistent with the information contained in the [*DOT*]," Tr. 37, the hearing transcript reveals that she did not make the proper inquiry.  Moreover, although Perry does not specifically identify any actual or apparent conflict, review of the record reveals a potential conflict between the *DOT* language requirements of the listed occupations and the reading and writing limitations in Perry's RFC assessment.[6]  Accordingly, when the ALJ reaches step 5 after reassessing Perry's credibility on remand, she must determine whether there is a conflict between the VE's testimony and the

---

[5]  While the Commissioner notes that the VE provided the corresponding *DOT* code numbers for the occupations of cigar-head piercer, buckler and lacer, and label-cutter, the Commissioner does not contend that this was sufficient to relieve the ALJ from inquiring as to whether the VE's testimony was consistent with the *DOT*.

[6]  Specifically, I note that each of the jobs the VE identified—cigar-head piercer, buckler and lacer, and label-cutter—are classified as level 1 positions on the GED language scale used in the *DOT*.  *See DOT*, Code No. 529.685-058, *available at* 1991 WL 674659 (cigar-head piercer); *DOT*, Code No. 788.687-022, *available at* 1991 WL 681176 (buckler and lacer); *DOT*, Code No. 585.685-062, *available at* 1991 WL 684400 (label-cutter).  An individual is a level 1 on the language scale if he or she is capable of the following:

> Reading: Recognize meaning of 2,500 (two- or three-syllable) words.  Read at rate of 95-120 words per minute.  Compare similarities and differences between words and between different series of numbers.

> Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

> Speaking: Speak simple sentences, using normal word order, and present and past tenses.

*DOT*, App'x C, *available at* 1191 WL 688702.  The RFC formulated by the ALJ specifically states that Perry is never able to "perform work that requires reading or writing." Tr. 32.  Thus, there is a potential conflict between the reading and writing requirements of the positions the VE identified and Perry's limitations, as found by the ALJ.

Page 20 - FINDINGS AND RECOMMENDATION

*DOT* and, if there is, whether there is a reasonable explanation for the conflict. *See Massachi*, 486 F.3d at 1153-54; *see also Wells v. Colvin*, Case No. 12-cv-05287-JST, 2013 WL 6225180, at *4-5 (N.D. Cal. Nov. 23, 2013) (remanding for rehearing where the ALJ found that the claimant could not perform work that required reading or writing but found that a person with the claimant's limitations was capable of performing level 1 language positions); *Dowell v. Colvin*, No. 03:12-cv-00081-PK, 2013 WL 5372773, at *19 (D. Or. Sept. 23, 2013) (remanding for further proceedings where the ALJ found that the claimant could read and write his own name and, by implication, could not read and write other words but found that a person with the claimant's limitations was capable of performing a level 1 language job); *cf. Johnson v. Astrue*, No. C 12-01580 PJH, 2013 WL 3956248, at *12 (N.D. Cal. July 30, 2013) (finding no error at step 5 where, although the VE testified that the claimant, "as a functional illiterate, could perform jobs such as small products assembler," the VE testified that the small-products-assembler position required no reading).

## CONCLUSION

Based on the foregoing, the Commissioner's final decision in connection with Perry's May 1, 2007 application for SSI benefits should be reversed and the matter should be remanded for further proceedings consistent with this Findings and Recommendation. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


Dated this 1st day of July, 2014.

Honorable Paul Papak
United States Magistrate Judge